The case is Kenneth Bailey v. Shawn Swindell. Mr. Hall should be here for the appellate. Mr. Longfellow for the appellee. Mr. Hall, you may begin when you're ready. Thank you for allowing oral argument in this case. I think there are some significant nuances that got interpreted under the wrong standard with the summary judgment on qualified immunity and the unlawful arrest inside Mr. Bailey's home. And I start with that conclusion because that's what, taken in the light, most favorable to Mr. Bailey occurred. Was it inside the home or was it in a doorway on a porch to his home? The testimony, Your Honor, is that it was inside the home with the tackle taking him further inside into the living room. So I think the trial court made two errors. First, they made the conclusion that he could have been detained. And maybe that's true. I don't accept that premise because of the facts that they used to get there. This was a call that came in from a woman who said, this isn't an emergency. I'm just trying to make a record for my divorce attorney because I'm trying to get custody of my children. And then relayed a verbal argument through a closed door at a house that Mr. Bailey was fully entitled to go to. But he knew, even discounting the stuff that he learned later, he knew right at the very least that she was in fear and that Bailey had done some weird stuff, right? I mean, he would come over and turn pictures around, do some just bizarre behavior. Would that not give arguable, reasonable suspicion to detain the guy and ask him some questions? If that were the only fact, Your Honor, that they relied on, I think we could get there. But the trial court had several other facts that there's no way he could have known. And in fact, didn't even occur. The banging on the door, multiple raucous children. These things didn't happen. So my question in that regard is, were these facts taken in the light most favorable to Mr. Bailey? But so can we not just kind of, I mean, I tend to agree with you. And we'll ask the other side if the court was relying on stuff that it shouldn't have been relying on. But can we not just kind of scrub out the bad stuff and say even the good stuff would have been enough for arguable, reasonable suspicion? To detain at what level, right? Yes, sir. Yes is the answer, but to detain at what level? So we're on the porch, right? You told me earlier that he was in the home now. See, because this is important. It is, yes, sir. So was he on the porch or was he in his parents' house, physically in his parents' house when Officer Swindle went through the door? Because if he was in his house, your argument would be that there's either exigent circumstances or consent and there's probable cause to arrest him, right? That's right. That's what they would have to show in order to be in this man's home, and they've not shown that. And yes, sir, to answer your question, the detention, and if you look at their motion for summary judgment at page 19, the moment that that officer decides to detain him is when he goes inside the house, okay? Now there's some question, there's a fact question about did he cross the threshold, was he at the threshold? Three witnesses said he was inside the house. Okay, but the officer says when he was detained, he was on the porch. And my question to you is, are we bound by the Supreme Court's opinion in the United States versus Santana? The Supreme Court said that the doorway on a porch is considered a public place. It's not a part of the curtilage of the home. Well, the testimony is that he was inside the home. Does Officer Swindle say that? He does not. He does not. And so your argument is that we have to look at the facts and the like most favorable to Mr. Bailey? Because he's got two witnesses who say that when the officer tackled him, he was not on the porch, he was in his home. Yes, sir. That's exactly right. I just want to make sure I understand your argument. And can I just be sure that I've got sort of the chronology and the terminology correct? So my understanding was that the detention, something short of an arrest, the reasonable suspicion-based detention, occurred perhaps while the officer was at his car and Bailey was on the porch. The basis for the full-blown arrest, which occurred on the facts and the like most favorable to you, was his resistance of that initial detention. Is that right? So we have detention outside the house, but an arrest ultimately inside the house, is your view? We don't have any detention outside the house. Well, I know that you don't lie. I know that you dispute the detention. But if there was a detention, something short of an arrest, and it happened outside the house, they're going to say he wasn't free to leave because the officer was being a jerk and was ordering people around, and that's where the detention occurred. He was standing on the porch, the officer standing near his car. At that point, the guy was detained. Bailey was detained. And when he turned around to walk into his house, that's the basis for resisting an arrest or whatever, resisting law enforcement activity, so there is an arrest for that crime inside the house. Is that right? No, sir. Respectfully, no, sir. Okay. That's good. The officer's own testimony was that he was free to go. He could walk anywhere he wanted. Okay. Four times he said that, and then he changed his testimony. But in the light most favorable to us, he told him all of those things before he entered the home. And the last thing he told him before he entered the home was, you're not under arrest. A reasonable citizen on his front porch being told he's not under arrest has the right then to discontinue that contact and go inside, which is what he did. The testimony is that is what he did, and then the testimony is also that he was tackled inside his home. It's tough, Your Honor, to convert he was free to go, I thought he was free to go, I told him he wasn't under arrest, to a detention. I guess what I'm suggesting is that even if there were a detention outside the home, because we're here on this sort of arguable, reasonable suspicion standard, qualified immunity, even if there were a detention outside the home, and even if there was probable cause to believe that he had violated the law by resisting that initial detention, I think it's possible that you still win because there is an arrest now inside the home. Yes, sir. Yes, sir. Okay. I just wanted to make sure I had sort of the chronology correct. And I recognize, of course, that you dispute my premises. No, no, no, Newsom, there was no detention. There was no reasonable suspicion. I get that. All I'm saying is that it might be that there was reasonable suspicion and there was a detention and there was a violation of the law, but nonetheless, Payton says the arrest occurred inside the home and that's unlawful. Yes, sir. Okay. Got it. And they've actually argued in their briefs that there were, they don't call them exigent circumstances, but they, fresh pursuit. He said, why are you here? And the testimony is that the officer didn't tell him why he was there other than an investigation. Didn't say about what. And he said, if you're not going to tell me why you're here, I'm going back inside. Got it. And he slowly walks back inside and makes it inside. There's no testimony or even suggestion that he quickly evaded or tried to do any of those things. The justification for entering his home is that even though the report says there's no evidence of any firearms or anything like that, and this is a staff sergeant in the Air Force, you know, studying for an exam. I mean, he doesn't know those things, so it's outside of what he would know. But there's really no reason to think that this man is heading off to get a gun. He doesn't have any priors. They know that before he gets there. There's nothing out for domestic violence. They know that. The information that they have when they go in the house is just that, well, people in Santa Rosa County have guns inside. That's not enough to set aside a Fourth Amendment under any case I've ever read. So unless there are questions, I'll see the balance of my time for rebuttal. Thank you, Mr. Hall. We'll hear from Mr. Longfellow. May it please the Court. My name is Joe Longfellow. I represent Deputy Sean Swindell on this appeal. And what we're here today to do is ask this court to affirm the trial court's determination that Deputy Swindell was entitled to qualified immunity and therefore entitled to summary judgment on count one of the complaint for false arrest, which is the only issue here on appeal. The state law claim for false arrest has not been appealed and has been waived. And the basis for that is there was— State law claim for excessive force, you mean? No, state law claim for false arrest. State law claim for—OK. And the excessive force claim went to trial, went to verdict, defense verdict? That is correct. All right. That's not on appeal either. That is not, Your Honor. So I'll just show my cards if I haven't shown them already. You know, I think the other side's—the toughest spot in this case for them is showing on a qualified immunity sort of watered-down, arguable, reasonable suspicion standard that there wasn't reasonable suspicion or that there wasn't a detention. I think, frankly, for you, the toughest part of this for you is if, as Judge Wilson says, reading the testimony in the light most favorable to Bailey, there was an arrest inside the home. Peyton's pretty clear, right? Well, I don't think it is. I don't think it's that clear. So you don't think Peyton is clear when it says, we have drawn a firm and bright line at the entrance to the house? I think the entrance to the house, based on Santana, threshold of the doorway, we're good to go. Once you get in the house, if we have exigent circumstances pursuant to Florida Statute 901.15, Deputy Swindell was permitted, if there's a misdemeanor committed in his presence, which there was, violation of Florida Statute 843.02. But so you've said two different things. You said to me, number one, forget about Peyton. This case is controlled by Santana. I have my doubts about that, frankly. I'm not even sure that Santana has a majority holding because Justice Stevens has a separate concurring opinion in that case, which seems to me narrower. So the rule that you want to draw out of Santana is a for-justice rule, I think. And then separately, haven't we said post-Peyton that to the extent that there is some uncertainty about how Peyton and Santana mix, I'm looking at this case McClish v. Nugent, where we say to the extent that Santana is read as allowing physical entry past Peyton's firm line, bounded by the unambiguous physical dimensions of the home, without a warrant or an exigency, the interpretation is inconsistent with Peyton, the court's subsequent cases, and our own binding precedent. Well, and that was the point I was going to get to, Your Honor, is that there were exigencies. Okay, so just so I'm clear, so there are two arguments that you might make. One is Newsom stopped talking about Peyton as a Santana case. It sounds like that one is the one we're not really talking about anymore. Then you might say, fine, Peyton is the rule, but we had exigent circumstances. That's the one you're now going to kind of ride, it sounds like. I'm going to ride both, Your Honor, because I believe the facts support both arguments. So talk to me first about Peyton and Santana. Then I promise you we'll get to exigent circumstances. But talk to me first about Peyton and Santana. It seems to me that if the testimony read in the light most favorable to Bailey is that he's inside the house, Peyton just sinks you and that Santana doesn't save you and that we have said that Santana can't save you. But the problem is the facts in the light most favorable to the plaintiff don't suggest that there's an impossibility. He could not have been in that house. And if we walk through the transcript at his depot, and I'm prepared to do that if the court would indulge me to answer the question. Let's go to volume 2, document 77-2. We'll start on page 101. 9 through 25 are the lines. The question was all right. So after Mr. Swindell said to you for the third time that he wanted you to step out of his car and you said no, the next words out of his mouth are, I'm going to tase you. After I turned to go inside, yes. So as you turned to go inside, you and Mr. Swindell were the same distance apart. We just saw the videotape of you and I. Answer roughly. And didn't Mr. Swindell say to you, you are not free to go? No. Okay. Did he say anything to you at all? Answer, I'm going to tase you. Okay. All right. Did he touch you at all before saying, I'm going to tase you? Answer, it was at the same time. So what we've got established here is there is a turning around. There is a touching. There is a statement by Deputy Swindell, I'm going to tase you. This happens at the same time. He later goes on to say that it's simultaneous. But didn't Swindell repeatedly admit during his deposition that Bailey would have been free to leave during this back and forth? Although he later retracted those admissions. Well, that is what he initially said. So if this case went to trial, then Bailey's lawyer would have an opportunity to impeach Swindell with two prior inconsistent statements, which the jury would be entitled to rely upon. Right? That is correct. And didn't Jeremy and Evelyn both testify that Bailey was inside the home? Yes, Your Honor. Okay. So then, I mean, isn't that enough? I mean, they were eyewitnesses, and we're going to read the testimony, the evidence in the light most favorable to Bailey. At the very worst, we've got a he said, she said between the parents and the officer, and we believe the parents for purposes, for this procedural posture, right? And I can appreciate that statement. However, what we do know is this. As he turned around to go inside, and he says the appellant is claiming that in the light most favorable to them, the testimony is reading that he was inside at the time that he was tackled. Well, to get to that point, the officer has to make some kind of effort to get to that area where he's at. Let's change the facts a little bit. Let's say your officer rolls up on the house, sees what is obviously a drug transaction going on the front porch. Bailey goes into the house. Does he need a warrant to go into the house and arrest him at that point? No, I don't think he does. Really? And the reason I don't think he does necessarily is there could be an argument based on those limited facts you gave me. I'm assuming there's going to probably be some additional facts that would be fleshed out. But there could be a concern by the officer at that point that there's going to be destruction of evidence. There's going to be some kind of weapon inside, particularly in this county. You'd rely upon exigency of circumstances based upon destruction of evidence. What? Public safety. That doesn't apply here, does it? Of exigent circumstances in this case? Destruction of evidence in particular. Destruction of evidence? No, there doesn't. All right. That does not exist. But we do have officer safety, a concern for that, for which we do know. How is this officer safety? He was concerned there might be a gun in there. This is a county, a rural county, where guns are heavily populated. And, in fact, what we do know, Your Honors, is that there was a gun. He had a gun. The appellant's father came out and pointed a gun at his head while he's trying to arrest Mr. Bailey. He actually dealt with that. So to suggest that, you know, that doesn't seem like a well-founded fear. Well, it actually happened. And so because it actually happened, that further supports his fear that he initially had. He knew the area. He also knew that this was a domestic dispute of some sort. Domestic disputes, the courts have seen over the years, are combustible situations. Was his wife at the house? Whose wife? Mr. Bailey. The appellant. Because he's at his mother's house. Mr. Bailey. Yeah, his wife wasn't at his mother's house. The complainant. The complainant was not there, no. Okay. Well, I note that in your brief, you never argue that consent or exigent circumstances apply. In fact, on page 47 of your brief, my notes reflect that you suggest any suggestion that he might need an exception to the warrant requirement. Do you have your brief with you? I do. Okay. You're on page 43, you said, of my brief? 47. Oh, 47. What do you say on page 47 about exigent circumstances? I don't say anything about it there, Your Honor. Judge Wilson might be referring to the first sentence where you say, it does not matter whether this was an emergent situation or one where it was not. I'm not sure exactly what that means. But it seems to me you did not argue exigent circumstances in your brief. I didn't ever see that argument in your brief. Well, the argument could be made, Your Honor, if we go on to the next argument that we make in that brief on page 48 where we said the law was clearly established that Swindle did not need a warrant to arrest Mr. Bailey. And so when we're looking at the clearly established law, based on the circumstances that were going on at that time, based on the law that had been established at the point of the arrest on September 11, 2014, his actions were appropriate. So it could be implicit from that argument that that's where it would be. But you take Judge Proctor's point, right? This is the same colloquy that I was having with you earlier. There are two very different arguments that you're making. One is forget about Payton. This is the Santana case. Forget about exigent circumstances for that matter. They could arrest him because he was on the threshold or whatever. The other is, no, no, no, he was in the house. Fine, I'll grant you your premise that he was in the house, but exigent circumstances permitted them to go into the house. And it sounds to me from your response to Judges Wilson and Proctor that you really haven't made the second of those two arguments. Today you sort of have, but not in the brief. I would say it would be implicit based on that second argument that starts on page 48 of our brief, where we talk about what the clearly established law is and why he would be protected under that. As we know, that's the second prong for qualified immunity. And the purpose of qualified immunity, as this court is well aware, is to protect the officers in doing their job. It's to make sure that only the clearly incompetent are held liable for their actions, not that these officers have to try to dance upon this hazy border of what is the law, what can I do, what can I do, that they can act so they can protect themselves, they can protect us, they can do the things that need to be done. I actually share your concern, as Judge Wilson knows well, I share your concern about officers needing bright lines. I happen to think that the Supreme Court drew a pretty bright line in Payton. It says at the threshold to the door, it's over, rules change. That way you don't have to worry about, well, am I on the porch, inside, outside, the foyer, the curtilage, whatever. At the threshold to the door, the Supreme Court has said in the interest of clarity, that's where the rules change. That's a perfectly good, discernible, applicable rule for police. And that could be the case, and I don't necessarily suggest that it's not the case, however, what we have conflicting here is you have those holdings, then you also have this statute that an officer can go ahead and read, 901.15, and it says he's allowed to go after somebody if a misdemeanor is committed in his presence, while he's conducting, and... Subject to the Fourth Amendment, presumably, correct? To the extent that there are any limitations to that, yes. However, it says immediate or in fresh pursuit. And so his actions, Deputy Swindell's actions were immediate. This was not one of these where I'm going to sit here and think about what I'm going to do. I mean, the guy went inside, so, you know, should I go after him? Should I go get a warrant? Should I just leave for the day? Should I just assume this dispute will be over? He had a right to go and do that, and so based on those circumstances, the law that was set at that time, on September 11, 2014, a reasonable officer would think he could go and do these things. He did not make a completely incompetent or irrational decision to go and do what he did. There's no dispute. We wouldn't be here today if he had just gone and gotten a warrant. That probably would have been the easiest and simplest things, but we're not looking at things hindsight. When we make these reviews, we're not doing them via hindsight. What would he have gotten a warrant for? What would have been the probable cause leading to a warrant based on these circumstances? Well, the first thing we would have had is at that point, when he went back into the house, we had a violation of 843.02. He was obstructing, resisting, or opposing a law enforcement officer conducting a lawfully executed duty, which he was detaining him to make an investigation to determine if a crime had occurred previously in that evening at his former marital residence. I thought at that point Swindell says he had no probable cause to conclude any crime had occurred. That is correct, and he was referring to whether or not there had been an assault or whether there had actually been stalking that had occurred there. The fact that those issues never got charged, those crimes were never charged against them, doesn't matter. If you're conducting a lawful duty… Well, that Florida statute that you just mentioned, 843.02, was interpreted by the Florida 1st District Court of Appeals in Cooper v. State, holding that an essential element of the crime of resisting an officer without violence is knowledge on the part of the defendant that the officer intended to detain him or her. Correct, and that's established by the facts. Let's look at the things that were going on at this point for… But is it established in a light most favorable to Mr. Bailey, I guess is the question. Yes, I do. I think it's… My time is up. May I answer the question? You may. If we look at the facts of what was going on, any reasonable person would have known, would have thought, I can't leave this situation. You have an officer who is repeatedly demanding that your brother and your mother go back in the house, repeatedly demanding you go to his patrol car to come and speak with him. He is yelling. He is being aggressive. He is angrily looking. These are words that came from Mr. Bailey himself. Those were his words. You have that. You have an officer there in a marked patrol car, in uniform. This is not a friendly consensual encounter as the appellants have attempted to persuade this court to believe. It was an investigatory detention by all means, from the perception of law enforcement as well as the perception from a reasonable person, which was the standard. Thank you. Thank you, Mr. Ross. I'm sorry, Mr. Longfellow. No, I'm Mr. Longfellow. Mr. Longfellow. And Mr. Hall, you preserve some time. Thank you, Your Honor. I guess I want to pick up where Judge Proctor asked the question. A warrant for what? The only misdemeanor that we're talking about is the one that, in the facts most favorable to Mr. Bailey, occurred inside the home. The resisting and the opposing. That's inside the home. All the information that the deputy had when he showed up, when he told him he wasn't under arrest, and he acknowledged later when he said he was free to go, was that a crime had not been committed. Deputy Magdalene relayed that to him. He understood that. He admitted in deposition that he gained no new information at the time. The testimony that when he turned to go inside, I immediately said something and placed my hand, is in dispute. And the location of that is in dispute. We've got a reactionary gap that he testified that he keeps. Witnesses gave that gap away from him to up to 13 feet or yards. I can't remember, honestly. I think it was feet. And the Cooper versus State is exactly right. You have to have knowledge that you're being detained. When an officer tells you you're not under arrest, and then a year later, but before the summary judgment, says my understanding was he was free to go at that time. Nothing changed other than he wasn't going to continue a consensual encounter. Just so I understand the chronology, the point you just made about the dispute and the evidence, my understanding from the record is that Bailey, Evelyn, Jeremy, if I have the names correct, they said that the hand on the shoulder occurred inside the home. The officer said it sort of started outside the home. The testimony about a hand on the shoulder really only occurred from the deputy. Everyone else's testimony was it was a full tackle. Got it. It was a forearm with a taser. Yeah, the first contact. Yes, sir. They say inside the home. Deputy says outside the home. Got it. Okay. Exactly correct. And the other issue, I guess, for chronology purposes, although I think we get it, the hollering between the door, that happened more than two hours ago before the deputy got there. Or right at two hours before the deputy got there. And they're separated by miles and miles and miles. There's not a concern that something's going to blow up there. Not a reasonable concern at any rate. Unless the panel has any other questions, I'll cede my time. And I appreciate you allowing oral argument. All right. Thank you, counsel.